22-1722 Eastern Missouri, Dale Bookwalter v. David Vandergriff Mr. Schreiner This is a rare case in which a state court has unreasonably applied Jackson v. Virginia and has made an unreasonable determination of the facts. Even viewing the verdict in the light most favorable to the prosecution and applying the double deferential standard that a federal court, when reviewing a state habeas petition, must do on a claim of sufficiency of evidence, the Missouri Court of Appeals finding that sufficient evidence in support of the age of Mr. Bookwalter's son is both incorrect and objectively unreasonable. And why is that? Missouri Court of Appeals focused on three combinations of facts that even though individually they found they were speculative, they found the combination of those facts supported a juror's finding beyond a reasonable doubt of the age of Mr. Bookwalter's son. And those three sets of facts was that the court noted that the victim did testify in the case, that there was evidence that the victim was in the seventh grade at approximately the time of the alleged offense, and that there was testimony regarding the sibling's ages. The reason the finding, either individually or combined, why that finding is incorrect and speculative is because first, regarding the victim's testimony, the court did put great weight on that because the juror could observe the victim's demeanor, maturity. But again, the trial record's silent as to the appearance of the child. Was he old for his age? Did he appear older for his age? I have a question about that. Does that matter? I get your point where sort of the court is saying, well, they got to see the person and make their own conclusions. And you point out, well, nobody's described this kid. We don't know what that means. Sure. But we never really have that. So I just wondered, I don't think we do usually. We sort of defer to, not sort of, we do defer to jury's decisions about who to believe. And we don't really require on an appellate record a description of why someone looked a little shifty or that they weren't looking him in the eye or anything like that. And I just wondered if you could help me understand that one of your three-pronged argument a little bit better. Yeah. So the court of appeals said, well, they could observe his maturity or lack of maturity in the case by viewing him testifying. But then again, we do have evidence in the record that he was taking special education classes. I don't know if that had an impact on the way that he testified. Again, the record's silent. And I understand what you just asked me, Judge. But I mean, and I guess the thing, my point is, I mean all the prosecutor had to do was say, how old are you? What was your age? What is your age at trial? And, you know, we know the date of the offense. And it would have been that simple. I think just in testifying, I mean, jurors aren't experts in child development. I mean, I think it's really difficult, that factor alone. And I guess it's kind of moot in a way because by itself the, well, it's not moot, but I think that factor alone, the court of appeals, Missouri Court of Appeals found by itself didn't support. Well, and I suppose there are cases where a child's age is at issue, and we do have expert testimony, but to your point that jurors are not necessarily experts. And I know the respondent had cited several cases in its reply brief. They were two child pornography cases out of, I believe, the 11th Circuit, if I remember correctly. And to compare those cases to what happened in this case, I mean, they're drastically different. I mean, there was a child expert in one of those cases. I think a pediatrician testified. Yeah, the child began to understand and said, hey, I'm 13 years old at the time. But there was a lot more evidence in that. So I think that factor standing alone, I just don't think it tells you anything. I mean, I'm terrible at guessing people's ages. As I get older, I get worse. I mean, you know, I just don't think that factor alone, and the court did find that simply the child testified wasn't going to get you over the hump in that. The second factor that the court of appeals identified was that there was evidence the victim at the time near the offense was in the 7th grade. It's interesting, the prosecution didn't even elicit this testimony. It was the defense lawyer on cross-examination of Mr. Brookwalker's son's special education teacher, that he was in the 7th grade. Again, it wasn't. I think, have you, I'm sorry, have you identified any Missouri law, for instance, that might have to do with compulsory school attendance that might help us decide what the likelihood is that this person was 14 in the 7th grade? Judge, I don't know if that's relevant in the fact because what we're doing is we're applying constitutional law under, was it in a reasonably applied, did the state court reasonably apply Jackson versus, to answer your question, no. But the point, you know, the standard is whether the Missouri Court of Appeals reasonably applied Jackson versus Virginia in this case. I'm sorry, the standard is what? Unreasonably applied Jackson versus Virginia, the sufficiency of the case. My question is a fractional one. This case is all about whether there's sufficient evidence here to find this gentleman guilty beyond a reasonable doubt. One of the pieces of evidence that is adduced to show that he was, that his age was, as you claim it was, was that he was in the 7th grade. Isn't that right? That's correct, Your Honor. So how do we know, I mean, is there anything in Missouri law about compulsory school attendance at a certain age that would help us decide the likelihood that he was 13 or 14? I mean, it seems to me that's irrelevant data. Most people in the 7th grade, I think we can say at least common experiences, are not 14 years old, but some are. That's correct, Your Honor. But, you know, the Missouri compulsory school law, well, as I read it, seems to indicate that your child has to be in school at age 7, but not before. I believe that's what the law was at the time of this trial. Judge, that's something I've not researched. I know that was something that was not... Okay, I just wondered if you... Okay, that's fine. ...or raised during trial, obviously. I mean, there was no... But it doesn't have to be raised during trial. The question is not whether this jury was thinking this way to reach this verdict. The question is whether a reasonable jury could have reached this verdict based on what the evidence was and what might be things that we can take judicial notice of outside the record because of the legal situation that was in place. Isn't that right? We don't have to... The government doesn't have to show that there's any particular path that the jury actually took. We don't know that. That's correct, Your Honor. It's an objective matter, not a subjective matter. That's correct. And it just wasn't simply there. I mean, any of that type of... I mean, we didn't know what... There was no evidence that we... Again, and you said this wasn't... The fact is we don't know. No one put on what the usual 7th grader evidence of how old the usual 7th grader is in the case. The third group of facts or evidence that the court relied on was the ages of the siblings. Ms. Herbiculture's son's mother testified that she had two children, a son, a half of the victim, and a sister. The older brother was 15. The sister was 14. But we really don't know what... We do know the brother was older, but we don't really know the birth order in that situation. So the Court of Appeals, in reviewing that evidence, kind of came up with a fairly impressive chart. I think there was nine different possibilities of what age the victim was at the time of the offense. It did not exclude the fact that he could have been older than 12 years old. I'm sorry, 13 years old at the time. And what's interesting about the chart, I mean, it's obviously something that kind of sticks out to me. The jury only deliberated in this case for 20 minutes. I think the judge in Missouri Court of Appeals spent a little longer than 20 minutes coming up with this chart. And I just don't see, you know... I mean, this is obviously my opinion, but I think the jury just heard the prosecutor say in opening he's 14 years old, say in closing he was 14 at the time of the trial, and close in saying he was 13 years at the time of defense. And, you know, that's all they had to hear. And how do we factor that in? Because I think that's an interesting fact in this case, is that the jury heard things that were not, everyone agrees, were not evidence, but that's really the only solid evidence, I'm sorry, information that they heard. Does that factor into this analysis? And if so, how? Because I'm just not sure how to piece that together. Yeah, that's a good question, Judge. If my memory serves me right, I don't believe that Judge Mensah factored that in, that fact. I know I raised it in the habeas petition, and I raised it in my brief, that that was the only indication of that. How that factors in, yeah, the Court of Appeals didn't really address that issue in their brief. Well, was there an instruction that opening statements and closing arguments were not evidence? Exactly, Judge. So don't we usually presume irreparably that the jury heeded that instruction? And there was a jury instruction also, obviously, that arguments aren't facts, or arguments not evidence, obviously, in the case. But I think maybe the Missouri, I might misspoke, Missouri's Court of Appeals may have mentioned that arguments aren't facts, yeah. I thought the Missouri Court of Appeals chart was interesting, but one of the scenarios I thought was rather fanciful, and that is assuming that the second and third children were twins, I believe. Yes. It seems to me to be highly unlikely. Yes, Judge. My reading of, I've gone through this fairly carefully, if the victim was a second child, there's some considerable room in there for him having been 14 at the time of trial, at the time of the event, the charged event. So, you know, I won't go through the entire process, but, you know, I think it's perhaps, this little bit of evidence is certainly equivocal, and it's not obvious to me that it gets you to the point where it's more than very likely that he was 13. And that won't get you to beyond a reasonable doubt. I agree with you, Judge. So, I wonder, here's the question I have. Sure. The Missouri Court of Appeals said, well, anyway, all of these things taken together, we think that when you added all this all up, a reasonable person, any reasonable person, would have had to believe that the defendant was guilty beyond a reasonable doubt. How do you make those kinds of probability calculations when you're trying to accumulate? I don't understand exactly how that works. Judge, I have to agree with you. I mean, it's almost like if each of those factors standing alone are speculative and don't add up to beyond reasonable doubt, then how do they combine? Yeah, well, you know, it's usually kind of a homely example. If I drill three wells and they're all dry holes, if I put them together, I don't get a well. I get three dry holes. I mean, you see what I'm saying? No, I absolutely agree with you. How does this work? I'm not saying that it doesn't. I'm just saying I have a difficulty understanding it. I do as well, Judge. And given that Mr. Bookhalter has a due process right to have the evidence, you know, against him found beyond a reasonable doubt, I don't think we're there. Of course, ultimately we have to decide whether the Court of Appeals' decision was unreasonable. Exactly, Judge. Even if we might have come out a different way. I think that's a very difficult question. I agree with you, Judge. It's one of the few cases, sufficiency cases, that I've picked up and read and looked at and said, you know, Judge Schreiner, even in her opinion, and I know it's not the standard, she did say, if it was my decision, I probably wouldn't have gone this way. I mean, you know, she said, even though that's not the standard, it's not something I would have made probably the same decision as the Court of Appeals, which I thought was interesting. Mr. Schreiner, did defense trial counsel raise this issue in any way, either by argument to the jury or directed verdict or anything like that? No, Judge, he did not. He didn't raise it in his, he just said, Judge, it was like a three-word sentence. He said something like, you know, the jury moved for acquittal and denied. And then in his motion for new trial, he didn't raise it, specifically the age. But under Missouri law, he doesn't have to. I mean, as long as it's preserved, as long as it's an insufficiency, the evidence can always be raised. So that didn't need to be preserved. Is there any more questions? I see my time's almost up. I'll cede for the respondent. We'll give you a minute of rebuttal. Okay. Thank you, Judge. Thank you. Good morning, Mr. Splane. Good morning, Your Honor. May it please the Court, I would like to introduce Mr. Tyler Dodd, who is an intern with our office, who graduated from the University of Missouri Law School last month and will begin clerking for an appellate judge in August. And he'll be arguing the case. Very well. Welcome, Mr. Dodd. May it please the Court. My name is Tyler Dodd, and I represent the Iapoli Warden David Vandegraaff. In this case, Mr. Bookwalter has failed to show that the Missouri Court of Appeals was both wrong and objectively unreasonable. The district court found that the Missouri Court of Appeals applied the correct standard, the Jackson Standard, when assessing Mr. Bookwalter's sufficiency of the evidence claim. But what's more important is that the district court found that the Missouri Court of Appeals decision was not objectively unreasonable. The district court found that all of the facts that the court cited and the determinations that they made were well supported by the record. And further, when they considered each element of statutory sodomy, the age requirement and also the sodomy requirement, that the court provided accurately and carefully reviewed all of the evidence and then provided detailed explanations on why there was sufficient evidence of the victim's age in this case. Why is the jury's power to observe the victim at trial entitled to much weight when we don't really know what the victim looks like at trial? Your Honor, that's part of the deference that the reviewing courts must give to the jury in the case. Obviously, I think it was the discussion that Mr. Schreiner just had with a little bit earlier is obviously the record is silent as to the victim's appearance. And the way that I kind of view it is like when a jury makes a credibility determination. Ultimately, that's never, ever going to be in the record. But the jury here in the situation did have the opportunity to view the victim and make a determination that the victim was indeed under the age of 14. And the court must defer to that. Thank you. The thing is, there are cases in which there are photographs that are introduced of the victim and then an appellate court can review the photograph to decide whether, in fact, what the witness is saying about the photograph is correct. Of course, we don't have that. We don't have that in this case. That is correct, Your Honor. We do not have that. But you're quite right. We do defer to jury's ability to observe witnesses, at least with respect to credibility matters. There may be a special reason for that that doesn't obtain in this kind of case. But in any case, I think that suppose that was the only thing in the case that you had to go along for an affirmance. Would that be enough to get you there? Oh, well, the jury saw it, but that's it. Your Honor, it's unclear because we don't know what the state court would do in that situation. Because, I mean, obviously, perhaps if this court were addressing that on a blank slate and whether or not there's sufficient evidence, I mean, perhaps the court would be inclined to view that there was insufficient evidence. But here, I mean, it's unclear what the state court would have done. And perhaps it would have made – I'm just wondering what your view of it was. Would that be enough, your view of it? In my view, I mean, I believe it would be enough, yes. I think that jurors, I mean, jurors are well within their purview to view someone and make a determination. And I think that's where the 11th Circuit's decisions in both United States v. Smith and Lynch v. United States, in both of those cases, you had – the government had to show that the victim was a minor under the age of 18. And in both of those cases, there was no – there was never any evidence adduced of the victim's birthday. We just had circumstantial evidence of the victim's age in that case. And in both of those cases, the court found that the jury, being able to perceive and hearing circumstantial evidence, kind of had enough evidence to make that determination. There is a difference, though, I think, as Judge Arnold's pointed out, between credibility and determining an element of the offense, which is the age. And here we have someone who testified, what, a year after the alleged offense? It was nine months. Nine months. And so it's not even looking at someone today and saying, I think you – this person seems to be about X age. We're saying, I'm looking at this person today and subtracting nine months. And that had to be proven by the state for the conviction. Is that different than just sort of deferring to a jury's credibility determination on whether I think this – you really turned right or left or whether this was up or down, where they sort of believe you in the general fact recitation of a trial? I believe that, yes, it is a little bit slightly different here. But still, I think taking the broader picture here is just the jury's ability to perceive. And ultimately, I mean, there's issues that, like I've mentioned, that are never going to end up in the record, that an appellate court just simply has to defer to the jury's verdict in reviewing all the evidence that is presented. And so kind of talking about some of the other – the two other elements. So the second element that the court really considered was the victim's grade in school. And we get this testimony through the victim's teacher. Now, the court obviously correctly noted that there wasn't any evidence in the record about what the typical age was or whether or not they had been held back. But the court, using Missouri case law, reasoned that – in another case, under Missouri law, that there was insufficient age because basically the victim was in high school. It didn't have a specific grade level in that case. And so that's the NRA VFS case cited in the footnote in the brief. Basically, the court made the reasonable determination that that factor, even though there isn't anything broader in the record, that they could look at that as well. And then kind of turning a little bit to the last factor, which is the age of the victim's siblings. So the victim's siblings – so we had the brother's testimony and we had the mother's testimony. And we obviously – the jury heard that at the time of trial, the victim was – that the victim's older brother was 14 at the time of trial. And he has an older brother, so obviously it establishes that the victim is at least second or potentially third in the birth order. But then we also kind of get – we get testimony or the court looking at the 280-day presumed gestational period. And so the question is, under Jackson, is whether any rational trier of fact, after viewing all light – viewing all the evidence in light most favorable to the prosecution, can find beyond a reasonable doubt that the victim was under the age of 14. And we're not asking – it's not that we have to prove it beyond all doubt. Basically, can any rational juror be firmly convinced that the victim was under 14? And so I think the age of the siblings provides strong evidence. And then when you tie it in like the court did with the grade in school and then ultimately the victim's appearance, you do have sufficient evidence that the victim was under the age of 14. What is there in the record to indicate what the typical age of a seventh-grader is? There's no evidence in the record of that, Your Honor. So, I mean, so I guess it's kind of a jury notice case. Is that it? That the jury can use its own experience in the daily affairs of life and assume that someone in the seventh grade is almost certainly not 14? Is that what you're saying? Yes, Your Honor. Well, I mean, maybe that's true. I'm not sure. I mean, it's certainly true. I think that would be true in my experience, but I'm not sure how true that is in Missouri, especially when, in this case, you may have a compulsory school law that's relevant. And also, there was evidence, wasn't there, of some special education needs that the victim had? So, just wondering, does that get you to beyond a reasonable doubt, either by itself or in combination with some other things that might not get you there either? Right. Do you see my difficulty? Yeah. And I think the combination is probably the most important aspect of whether or not there is sufficient evidence in this case. Because, obviously, each piece of evidence alone would probably be insufficient to establish age. But when you look at all of them together, any rational juror, when you look at the evidence, and in light, most variable to the prosecution, any rational juror is likely to find that the victim was under the age of 14. And so, kind of pivoting off of AEDPA a little bit, I want to talk about law and justice in this case. So, recently, the U.S. Supreme Court has kind of refocused the attention for federal habeas cases and not only having considering AEDPA considerations, but also what law and justice requires. And the Supreme Court really focused on issues of factual guilt, whether or not the defendant was factually guilty. And the Fifth Circuit recently, in Crawford v. Cain, a case that was decided in 2022, but the Fifth Circuit withdrew and reissued its opinion in the case, basically was really concerned about the issue of factual guilt. And the Fifth Circuit, in that case, really focused on the fact that the defendant, in that case, could not prove that he was factually innocent of the crime, basically that it did not occur. And so, very similarly here, Mr. Bookwalter can't prove that he did not commit the crime. And I want to reiterate the point about age, and I think it goes to Judge Grunder's question a little bit earlier about whether or not, at any point during this proceeding, did they challenge age. And the answer is no. Age was never an issue in this trial. I mean, a week before the trial, they had an evidentiary hearing where it was clearly established, the mother testified that the victim was indeed 13 years old. The same information was in the Second Amendment information that was presented on the day of trial. And then ultimately, throughout trial, not during direct examination, not during cross-examination, not during motions for a directed verdict or a motion for a new trial, was age ever an issue. And so, I think, in this case, relying on the Fifth Circuit's decision in Crawford, that law and justice does not require that habeas would be granted to Mr. Bookwalter because he is not factually innocent. Of course, Crawford's… Go ahead, Judge. Go ahead. Go ahead. Please, go ahead. Well, I just wanted to ask whether… Is it your position that equity and justice and fairness require granting rid of habeas corpus only in instances where the claim of actual innocence is made? So, that is what the Fifth Circuit based their decision off in Crawford, but the Fifth Circuit also gave some other indications, including like whether or not the court had jurisdiction over the initial criminal case and also whether or not perhaps if they were prosecuted under an unconstitutional statute. And so, those are perhaps some other considerations. So, it wouldn't be to freestanding innocence alone, no. Okay. Thank you. Crawford relied on the Supreme Court's Brown v. Davenport, but did Brown v. Davenport go as far as Crawford goes? No, it does not. So, basically, Brown… The Fifth Circuit is out there on its own on this one, isn't it, at least at this point? Right. Yeah. The Fifth Circuit is the only circuit that has ruled on what law and justice requires at this point. And further to that argument, you say that he can't show actual innocence, but if there was no proof of age, he's certainly innocent of this particular crime. He would be considered legally innocent and not factually innocent. I see. Okay. Why is it not inequitable for a person to serve almost the entire sentence? And I think he has. Isn't that right? Wasn't he sentenced almost 15 years ago? Correct. Yeah. He's very close to completing his sentence. So, he must be… He's probably going to be released soon. Is that correct? I mean, I can't say for certain, but it's very likely that he will be released soon, yes. Yeah. So, why is it inequitable to serve almost 15 years for a crime that… for which there's no constitutional basis for you being convicted of? Why is that not inequitable? It could be, couldn't it? I mean, being wrongfully convicted and serving 15 years, I think we all could agree that it would be inequitable. But, I mean, in this case, I mean, the warden would contend that there was sufficient evidence and that the court's decision was both right and objectively reasonable. And I think this court's decision in Colvin v. Taylor and applying the Eleventh Circuit's precedence in this matter, applying Jackson to the case at hand, I believe, shows that there is sufficient evidence in this case and establishes the objective reasonableness of the Missouri Court of Appeals decision. So, if there are no further questions, the warden asks that this court affirm the denial of habeas relief from Mr. Bookwalter. Thank you, Mr. Dodd. Mr. Schreiner, I promised you a minute. Judge, yeah, one thing. Age has always been an issue in this case, obviously. Age is an element of the offense. So, to say that age wasn't raised in the case by the defense attorney, it's still something that the prosecution, the state, had to prove beyond a reasonable doubt. So, age was always… there wasn't any concession. Defense attorney didn't get them. So, yeah, we make a stipulation. Yeah, he was under 14 at the time. So, anyway. Getting back to Brown v. Davenport real quick. Yeah, I think the interpretation by the Fifth Circuit in that Crawford case is way too far. I mean, all that Brown v. Davenport said was they discussed… I think in one sentence they discussed… I think they used law and equity one time or law and fairness or whatever the thing is. I mean, the case is basically about whether a federal court could grant habeas relief based upon Breck v. Abramson alone, the standard of, you know, is there an interest in prejudicial effect as a result of trial court error. And they said that's an equitable thing. So, you've got to both… if you find under Breck, you also have to find under the ADPA whether it was unreasonable. And the Supreme Court said, yeah, they found Breck, that's fine, but they didn't apply the ADPA. So, you know, habeas relief wasn't required. So, any more questions? Time has expired. Oh, it is. Okay. Okay. Mr. Bookwalter had just asked that you reverse the district court, remand it, so the district court can issue a writ of habeas corpus. Oh, and just two quick things. Yes, Mr. Bookwalter, I think, will be released in October of 2023. And the other thing is, kind of a side factor, is that Mr. Bookwalter's state post-conviction case languished for eight years until he filed a federal habeas pro se. So, those are just things. Thank you. Thank you, counsel. We appreciate all counsel's appearance. Mr. Dodd, good luck on the bar. Case is submitted and we'll issue an opinion in due course. Thank you.